## Long *et al. versus* Perdue.

Where L. had a verbal agreement with the owners of oil lands for a lease upon payment of a bonus and a royalty, and P. agreed verbally with L. to take the lease, advance money to pay the bonus and sink a well, with the understanding that he was to hold a half interest in the lease in trust for L.'s wife, and, upon reimbursing himself out of the proceeds of the well, if successful, to convey her half interest to her, and P. afterwards took the lease, and put down a well: *Held*, upon a bill filed by L. and his wife and her assignee against P. for an account of the profits and a conveyance, that the wife of L. had a right to an account, and to a conveyance to her or her assignee of her half interest upon payment of the amount found to be due to P.: *Held*, also, that the fact that when the bill was filed P. had not received enough proceeds from the well to reimburse himself was not a ground for his refusal to render an account.

November 24th 1876. Before AGNEW, C. J., SHARSWOOD, GORDON, PAXSON and WOODWARD, JJ. WILLIAMS and MERCUR, JJ., absent.

[Long v. Perdue.]

Appeal from the Court of Common Pleas of *Butler county* : Of October and November Term 1876, No. 54.

This was a bill in equity, brought by George S. Long and his wife against John T. Perdue for an account of the profits of an oil lease and to compel a conveyance to the wife of a half interest therein. At a later stage of the cause, Melinda H. Pennock, assignee of Mrs. Long, and her husband, were made additional plaintiffs.

The bill set forth that on June 1st 1872, the plaintiffs, in behalf of the wife, entered into a verbal agreement with Andrew Gibson and others for a lease of a tract of land containing eight and a half acres of ground, for oil purposes. This agreement was what is called an " option." The consideration for the lease was to be a bonus of $200 an acre for the land, and a royalty of an eighth of the oil produced on the tract. The lease was to be executed as soon as Long and his wife should pay the bonus and begin to sink a well. The plaintiffs, before the expiration of their option, not having money enough to pay the bonus and begin operations, entered into a verbal agreement with the defendant, Perdue, by which he was to take the lease in his own name and hold it in trust for Mrs. Long as to one half interest and to advance the bonus money and enough money besides to sink one well. If the venture succeeded, Perdue was to be repaid for his advances from the proceeds of the well ; if not, the loss was to be borne equally by Mrs. Long and the defendant. As soon as the well should be completed, one-half interest was to be conveyed to Mrs. Long. The bill prayed an account of profits and a conveyance of a half interest to Mrs. Long.

The defendant, in his answer, set up a different agreement with the plaintiffs, viz., " that if the plaintiffs should pay one-half the cost of putting down a well on the lease before the well was finished he would, upon its completion, convey a half interest therein to either of the plaintiffs ; but if the money should not be paid before the completion of the first well, then no conveyance should be made." The answer further set forth that this agreement was verbal and was not made till after the title under the lease had been fully vested in the defendant, and therefore it was void under the Statute of Frauds.

There were many other averments in both the bill and answer not necessary to be mentioned here. The two successive masters to whom the case was referred, and before whom a large mass of testimony was taken, found the facts as set forth in the bill ; also, that the agreement between the plaintiffs and the defendant averred in the bill was made on May 13th 1872, and the lease to Perdue, ten days later. Further, that Perdue's profits from the tract when the bill was filed were not sufficient to reimburse him for his expenditures under the lease. Upon the report of the first master and the

[Long *v*. Perdue.]

decree of the court thereon, the cause was taken to the Supreme Court in 1874, where a *procedendo* was awarded. It was then referred to another master, upon whose report, confirmed by the court below, the cause now comes before this court.

The second master, finding the facts as above shown, was of opinion that the defendant was a trustee for Mrs. Long as to a half interest, but that as Perdue had not received sufficient profits from the tract to reimburse him for his expenditures, as agreed upon, therefore the bill was prematurely filed and should be dismissed without prejudice. The court below (McJunkin, P. J.) made an order confirming the master's report and dismissing the bill. The plaintiffs then took this appeal; the substantial assignment of error was to the order of the court below dismissing the bill.

*H. D. Foster, E. M. Bredin* and *J. H. Smith*, for the appellants.—The facts in the case show that Perdue was a trustee *ex maleficio* for Mrs. Long: Willard *v*. Willard, 6 P. F. Smith 120 ; Church *v*. Ruland, 14 Id. 432 ; Seichrist's Appeal, 16 Id. 237 ; Lingenfelter *v*. Ritchey, 8 Id. 485 ; Moray *v*. Herrick, 6 Harris 123 ; German *v*. Gabbald, 3 Binney 302 ; Dyer *v*. Dyer, 1 Lead. Cas. in Eq. 272.

The bill was not prematurely filed; how, except by an action, could Mrs. Long learn whether Perdue had been reimbursed or not ? Besides Perdue's denial of the contract with her under which he obtained the lease, gave her a right to proceed against him.

*McCandless & Greer* and *Thompson & Scott*, for the appellee.— Long had only a parol agreement for a lease and there was therefore no consideration or basis for the lease. He has no equity to turn Perdue into a trustee: Lynch *v*. Cox, 11 Harris 269.

In order to constitute the defendant a trustee *ex maleficio*, it must be shown that he intended from the outset to procure the title by fraud : McCulloch *v*. Cowher, 5 W. & S. 430 ; Plumer *v*. Reed, 2 Wright 46 ; Beegle *v*. Wentz, 5 P. F. Smith 369 ; Seichrist's Appeal, 16 Id. 237 ; Boynton *v*. Housler, 23 Id. 453; Wolford *v*. Harrington, 24 Id. 312. No such intention has been shown.

Even if the plaintiff's own evidence be true, a conveyance was not to be made to Mrs. Long till Perdue should be reimbursed for his expenditures from the profits of the well; the master finds that he has not been reimbursed, and the bill was therefore premature.

The plaintiff has an adequate remedy at law by ejectment: Church *v*. Ruland, 14 P. F. Smith 432 ; Lynch *v*. Cox, 11 Harris 268.

Mr. Justice SHARSWOOD delivered the opinion of the court, January 8th 1877.

[Long v. Perdue.]

If the appellants had a right to an account, which was one of the prayers of the bill, then it was not prematurely filed and ought not to have been dismissed.

We have in this case the reports of two masters, not harmonious as to the law, but sufficiently so as to the material facts to enable the court to decree the trust and to enforce an account. The first master, Mr. Greer, finds distinctly a parol agreement on or about May 13th 1872; that defendant on obtaining the lease of the lot should hold it in trust for Mrs. Long as to one half, that he was to advance the money to pay the bonus and should put down an oil well, to be reimbursed out of the proceeds of the well, provided the well was a good one; if not good the advances to be held as a debt against the plaintiffs, and when the well was completed to convey one half interest in the lease to Mrs. Long. The defendant in his answer admitted an agreement conditionally with the plaintiffs, that if they paid the one half of the cost of putting down a well before the first well was put down or finished that he would then convey either to Long or his wife the one-half of the well: and if the money was not all paid in before the first well was down, then the contract was to be null and void and of no effect whatever and no conveyance was to be made. He declares, however, that such parol agreement was not entered into by him until after the lease was executed to him, May 23d 1872, and the title fully vested in him, and then relies on the Statute of Frauds. We are of opinion that the finding of the master is sustained by the proof. It does not rest upon Long's evidence alone, but his statement is confirmed by Gibson and Haggerty, that before the lease was executed, Perdue said that Long and he understood each other. He told Baldwin on the day of the survey, which was before the execution of the lease, that he had taken the lease and that Mrs. Long would own one-half of it. His repeated declarations to several witnesses afterwards must be referred to this understanding. He stated, himself, the contract differently in his testimony, that if Mrs. Long paid up the money before the well was down she should have such interest as she paid.

Long's interest at the time of this parol contract was what is termed an option. Gibson, the agent of the owners, had promised him verbally to grant him the lease, provided he came forward and paid the agreed bonus within a certain time. This agreement Gibson was willing and ready to carry out in good faith—even though offered better terms from another party. Long being unable to pay the bonus—made the agreement with Perdue which has been recited—and Gibson made and executed the lease to Perdue by Long's request. It is clear, according to Seichrist's Appeal, 16 P. F. Smith 237, and Squire's Appeal, 20 Id. 266, that the circumstances gave rise to a trust by construction of law, not within the prohibition of the Statute of Frauds. Perdue obtained the title under the confidence reposed in him by Long. He could not have

[Long *v.* Perdue.]

secured it without Long's consent. Long had a sufficient interest. Gibson did not set up the statute, but recognised the contract with Long and actually executed the lease according to Long's direction.

Mr. Miller, the second master, very ably and elaborately supports this view, and finds that there was sufficient to establish the trust. But he thought that until Perdue was fully reimbursed his advances and had then refused to convey, he had done no act of which Mrs. Long could complain, no act that would make him trustee *ex maleficio*. As he was of opinion from the evidence that the well had not produced enough to reimburse Perdue for his advances, he concluded that the bill was prematurely filed, and therefore reported the decree that it should be dismissed without prejudice, which was confirmed by the court.

We think there was error in this. Had Perdue in his answer recognised his relation as trustee, as according to the proofs he ought to have done—without pretending that the contract was after the execution of the lease, and without setting up the Statute of Frauds, there can be no doubt that the plaintiffs would have had a right to an account of Perdue's advances, and of the proceeds of the well—so as to ascertain the precise amount upon payment of which Mrs. Long or her assignee would be entitled to a conveyance. And that in this proceeding, a bill in equity is a much more flexible instrument of justice than a suit at law. It is not always necessary that the equity of a plaintiff should be perfect at the time of filing the bill, provided it is so when the decree comes to be made. The familiar case of a vendor seeking specific performance against his vendee is an illustration. The rule in equity is to decree the specific execution of a contract for the sale of land, on the application of the vendor, if the latter is able to make a clear and unencumbered title at any time before the decree is pronounced: Hepburn *v.* Dunlap, 1 Wheat. 179; Moss *v.* Hanson, 5 Harris 379. If Mrs. Long or her assignee had brought an equitable ejectment, the jury by a conditional verdict could have found the balance due by her and given her a reasonable time within which to pay it. The denial of the trust in the answer, contrary to the truth, did not produce a different result. The repudiation of the contract by Perdue made him a trustee *ex maleficio*, not from the time of the denial, but by relation from the time of the original agreement. It would be a strange doctrine in equity, that in such a case a party could go on reaping the fruits of the agreement without liability to account until by express denial or repudiation the trust *ex maleficio* should spring into existence.

Mrs. Long had, therefore, a right to an account when the bill was filed, and she or her assignee will have a right to a decree for a conveyance upon payment by her of the balance ascertained to be

[Long v. Perdue.]

due—and it will be competent for the court to allow her a reasonable time to make such payment.

As the dismissal of the bill was erroneous, it is obvious that the decree of the court below on the subject of the costs and the masters, &c., must fall with it.

> Decree reversed, and record remitted to the court below that a decree for an account may be there entered, and the case referred to a master to take and report such account. The costs of this appeal to be paid by the appellee.